DOZIER *v.* MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered March 12, 1928.

1. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMED RISK.—In an action for personal injuries under the Federal Employers' Liability Act, a section foreman operating a motor car, who violated the railroad's rules by failing to put out a flag to signal trains, to get a line-up from the station agent on all overdue or extra trains, or to maintain a lookout at the time of collision with an extra train, *held* as matter of law to have assumed the risk of injury and to have been guilty of negligence, which alone caused the injury.

2. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Under the Federal Employers' Liability Act, there can be no recovery when the employer is guilty of no negligence, and the injuries result solely from the negligence of the employee.

Appeal from Marion Circuit Court; *J. F. Koone,* Judge; affirmed.

*J. H. Black,* for appellant.

McHANEY, J.    Appellant brought this action under the Federal Employers' Liability Act to recover damages for personal injuries received by him early in the morning of October 12, 1925, while working for appellee in the capacity of section foreman, at or near Buffalo, Arkansas. Appellant was an experienced section man, having been employed by appellee in such capacity for eight years, six of which he had been its foreman, and had never had an accident.

On the morning of October 12, about 8 o'clock, he took his motor-car from the tool-house, with a helper, to go over the track on his section, to ascertain if there

were any washouts or obstructions on the track, a heavy rain having fallen, which was still continuing at the time. The motor on his car was operating badly on account of the rain, and it was necessary for his helper to push the car a distance before it started to run. He had gone only a short distance when he had a head-on collision with another motor-car operated by appellee's superintendent, receiving severe and painful personal injuries. The superintendent's car was much larger than the section foreman's car, and could not be removed from the track, as could appellant's car. On this account the superintendent's car was operated under orders of the dispatcher, and, on this particular morning, was running as an extra, just as if it had been a train. The collision occurred on a sharp curve. Appellee had a rule applicable to appellant, to the effect that he should expect trains at any time, without warning or notice, and from any direction, and, in order to protect himself, to put out a flag each way, in front and behind. This rule was not complied with. Appellant admitted also that he did not get a line-up, that is, that he did not go to the station agent at the station of Buffalo and get a line-up on all trains overdue or any extra trains. Appellee had a rule that required this to be done when practicable. Appellant says he did not comply with this rule for the reason that the station agent was always late, and went on duty at 8:30, although the station agent lived in the depot at Buffalo, from whom he could have got a line-up on all trains, including the superintendent's motor-car running as an extra train, if he had asked for it, as it is not disputed that the station agent always had train orders by 8 o'clock in the morning. Rule 148 also provides that all hand and motor-cars must be run with care and caution, carefully protected by signals when necessary, and must not be used on main track in foggy weather, and requires the keeping of a constant lookout for trains while such hand and motor-cars are being operated. Said rule further requires that the foreman or man in charge shall stop and send flagmen ahead around all obscure

curves to prevent the possibility of colliding with trains or other motor-cars.

Appellant frankly admits that he violated all these rules, but contends that it was not practicable under the circumstances. He admits that he did not keep a lookout and did not see the car in which the superintendent was traveling until he was within five or six feet of it, for the reason that he had his head down, adjusting the needle-valve on the carburetor in order to adjust same so that it would hit regularly. Neither appellant nor his assistant was keeping a lookout, and the assistant says that the superintendent's car had slowed up and was not running over ten miles an hour at the time of the collision. Under this state of the evidence, without setting out more of it, the court directed a verdict against appellant, and he has appealed.

We think the court was correct in directing this verdict. The undisputed evidence shows that there was no negligence on the part of appellee in the operation of the car in which the superintendent was riding. On the other hand, the proof shows conclusively that appellant was guilty of the grossest kind of negligence in the operation of his motor-car, in violation of every rule on the subject; and, in taking the car out and in leaving the station without getting a line-up, as the witnesses call it, giving him all information concerning movement of trains or motor-cars operated under orders over his section, he assumed the risk of any injury he might receive by reason thereof. There was no negligence in the operation of the car of the superintendent, as it was being operated under orders of the dispatcher, just as a train, and, by calling at the station in Buffalo, appellant would have known of the movement of this car as an extra over his section.

While it is true, under the employers' liability act, contributory negligence is not a complete defense, assumption of risk is, and, when the employer is guilty of no negligence and the injuries result solely from the act or negligence of the employee, there can be no recovery.

No error appearing, the judgment is affirmed.